SAMMY K. FIELDS v. WINFIELD FIELDS, S. KINNON FIELDS, ROBERT EARL BENTON, AND LANEY TANK LINES, INC.

No. 7213SC345

(Filed 2 August 1972)

Automobiles § 53— intersection accident — crossing center line

An issue as to the negligence of the driver of a tanker truck in striking the pickup truck in which plaintiff was a passenger should have been submitted to the jury where some of plaintiff's evidence tended to show that the pickup was stopped in its proper lane at an intersection with its left turn signal on, and that defendant's oncoming tanker truck crossed the center line and struck the pickup truck.

APPEAL by plaintiff and defendants S. Kinnon Fields and Winfield Fields from *Cooper, Judge,* October 1971 Session, Superior Court, COLUMBUS County.

On 14 January 1970, plaintiff was a passenger in a 1969 GMC truck, owned by defendant Kinnon Fields and operated

by defendant Winfield Fields, servant and employee of Kinnon Fields. The truck collided with a 1967 Mack truck owned by defendant Laney Truck Lines and then being operated by Robert Earl Benton, employee of Laney Truck Lines. The collision occurred on U. S. Highway 74 at or near the intersection of Rural Paved Road 1506. Plaintiff seeks to recover damages for personal injuries. He alleged that both drivers were negligent, setting out specific acts of negligence as to each, and that their joint and concurring negligence was the proximate cause of his injuries. Defendants Benton and Laney by answer denied any negligence on their part, admitted allegations of the negligence of defendants Fields, and averred that the sole proximate cause of the collision was the negligence of defendants Fields. Defendants Fields by answer denied negligence on their part, admitted the allegations of negligence of Benton and Laney, and averred that the negligence of Benton and Laney was the sole proximate cause of the collision. After plaintiff presented his evidence, defendants Benton and Laney moved for a directed verdict. The motion was allowed. Plaintiff excepted and gave notice of appeal. At the conclusion of all the evidence, defendants Fields moved that Benton and Laney Tank Lines be made third party defendants and that defendants Fields be allowed to file a third party complaint against Benton and Laney. This motion was denied and the exception to the denial is the basis for defendants Fields' only assignment of error brought forward on appeal.

*Williamson and Walton, by Benton H. Walton III, for plaintiff appellant.*

*Crossley and Johnson, by Robert White Johnson, for appellants Fields.*

*McGougan and Wright, by D. F. McGougan, Jr., for defendant appellees.*

MORRIS, Judge.

### Plaintiff's Appeal

Plaintiff brings forward two assignments of error. The first is to the allowing of the motion for directed verdict in favor of defendants Benton and Laney. The second is to the failure of the court to set aside the jury's verdict as to damages.

Officer Byrd testified for plaintiff that U. S. Highway 74 runs east and west and Rural Paved Road 1506 runs generally north and south. When he arrived at the scene of the accident, he found a 1969 model GMC pickup truck just to the west of the intersection on 74 heading south. Most of the vehicle was on the highway. The Laney tanker truck was across the highway lying on its right side in the westbound lane. The cab of the tractor trailer was partially in the eastbound lane. Most of the trailer was in the westbound lane and hanging off the westbound lane onto the shoulder of the westbound lane. The left front bumper and fender was damaged on the tractor trailer. The right front of the pickup was damaged. Glass, dirt and metal were found in the westbound lane, to the north side of the intersection. There were two sets of tire marks made by dual wheels in the westbound lane. The tractor trailer had dual wheels at the rear of the truck. The tire marks stopped where the debris was located. There were solid yellow lines to the east and west of the intersection indicating no passing. There was some debris in the intersection on the south side of Highway 74. This was right around the pickup. Defendant Benton, the driver of the tractor trailer, told the officer he was driving at a speed of approximately 35 miles per hour and was meeting a pickup when it made a left turn in front of him. The posted speed limit was 45 miles per hour for trucks and 55 miles per hour for cars.

Defendant Benton was called to testify for plaintiff. He testified that he was, at the time of the accident, employed by Laney and was working for his employer at the time of the accident. Evergreen is about five or six miles from Boardman, and the accident occurred at the intersection near Boardman. As he left Evergreen he was following a Chevrolet which was traveling about 35 or 40 miles per hour and which he could not pass because of traffic. He was rounding a curve behind the Chevrolet when he saw a pickup truck come from a service station some 300 feet west of the intersection. The curve was some 300 feet east of the intersection. When they got to Boardman, the driver of the Chevrolet gave a left turn signal. Benton geared down to second gear to let the driver make his left turn. As he started to speed up, he saw the truck start to make a left turn in front of him. "I blew the air horns, didn't do no good, so I blew them again and locked the brakes down, and went off the right shoulder of the road. On the right shoulder

of the road, at the intersection, that's where we had the impact." His best estimate of the time elapsing between the time he hit the air brakes and the collision was about three or four seconds. When the Chevrolet made its left turn, Benton was a good "three truck distance" back of the Chevrolet. He did not see a turn signal on the pickup truck nor did it stop at the intersection.

Levonne Mason testified for plaintiff that he was standing on the road across 1506 waiting for the school bus. He did not see the pickup when it left the station, and it was about half way into the intersection on Highway 74 when he first saw it. He recognized the vehicle and whose it was. "When I saw it, it was proceeding Eastward going toward Evergreen. I looked around and seen the truck, when they were crashing, I mean the Fields' truck. In other words, I never saw the tanker, as far as I know, before I heard the collision." He never saw the Fields truck cross the center line of U.S. 74.

Plaintiff testified that he was riding in his father's pickup truck and his brother Winfield was driving. Their father had sent them to get some hogs to sell. They had just left the store operated by him and his father. "We pulled out and started down the highway, you know, we stopped, and there was two cars coming down the highway, there was one of them going on by us and the other one stopped over there on the other side of the road making a turn going down to Masadona. We stopped on our side of the road toward Bladenboro. And all of a sudden, this oil tanker came and hit us and knocked us off the road. I seen the flash of the oil tanker right when he struck us. We were sitting stopped in the road when it struck us." Winfield had the left turn signal on. "The big truck was on our side of the road because we was stopped there waiting to turn off, and we didn't never move. On our side of the road. When I saw the oil tanker, is when he run into us, I didn't see the oil tanker before he run into us but I saw him just as the slam came." "I would say that we sat there before being struck about twenty-five seconds." "We come out the station here and got on the road, we was going about ten or fifteen miles an hour until we got to the intersection, we come down to the stop to make a left turn, and one car went by and there was another that had stopped to go down this way, and that oil tanker come down there and saw this car stopped and was just going around him and knocked us off the road." "After

Winfield brought the pickup truck to a stop, in the right-hand lane, the truck did not move until the accident took place. It sat right there until the truck hit him. Until the truck came over there and hit him."

Viewing plaintiff's evidence in the light most favorable to him, as we must do, *Galloway v. Hartman,* 271 N.C. 372, 156 S.E. 2d 727 (1967), we are of the opinion that there was sufficient evidence of negligence to permit but not compel the jury to find that Benton and Laney were guilty of negligence which was a proximate cause of plaintiff's injury and damage.

We note that in his complaint, paragraph 6(e), plaintiff alleged, albeit inadvertently, that defendant Fields was negligent in failing to see that he could turn his vehicle safely before making a sudden turn across the highway with "plaintiff's (sic) vehicle in full view and coming down its side of the road in lawful fashion." It would seem that plaintiff would be well advised to move to amend.

Since we hold that the issue of the negligence of defendants Benton and Laney should have been submitted to the jury, and a new trial is awarded, we deem it unnecessary to discuss the other question raised by plaintiff and the question raised by the appeal of defendants Fields.

New trial.

Judges BROCK and HEDRICK concur.